AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search and Seizure of :
xxxx Carpenter Street, SE
Washington, DC  20020

# APPLICATION AND AFFIDAVIT
# FOR SEARCH AND SEIZURE
# WARRANT

CASE NUMBER:

(Further described below)

I   __Michael E. Gray II__   being duly sworn depose and say:

I am a(n)   __Special Agent with the United States Department of Labor__   and have reason to believe
(Official Title)

THE CONTENTS OF THE ABOVE DESCRIBED LOCATION, WHICH IS THE HOME/HOME OFFICE OF BURRISS LOCATED AT xxxx CARPENTER STREET, SE, WASHINGTON, DC  20020. A SINGLE STORY FAMILY RESIDENCE WITH WHAT APPEARS TO BE A WALKOUT BASEMENT GARAGE ATTACHED TO THE STRUCTURE. FACING THE STRUCTURE IS A SINGLE BAY WINDOW WITH FOUR PANES. THE RESIDENCE HAS "xxxx" WITH BLACK NUMBERS ABOVE THE FRONT DOOR AS WELL AS LOCATED ON A MAILBOX NEAR THE CURB IN FRONT OF THE HOUSE. THE MAIN ENTRYWAY INTO THE RESIDENCE IS TO THE LEFT OF THE BAY WINDOW THROUGH A SINGLE WOOD DOOR WITH A CLEAR STORM DOOR LOCATED IN FRONT OF THE HOUSE. THE STRUCTURE HAS A LIGHT RED BRICK EXTERIOR AND WHITE WOOD TRIM WITH A WHITE SINGLE CAR GARAGE.

conceal certain property, namely (describe the person or property to be searched)

DOCUMENTS, RECORDS, FILES, OBJECTS, CORRESPONDENCE, CONTRABAND, INSTRUMENTALITIES, AND/OR TOOLS,

which (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)

CONSTITUTE EVIDENCE OF A VIOLATION OF FEDERAL LAW,

concerning violations of Title __18__ United States Code, Sections __664, 669, 1027, 1341, 1343, and 1347__ and Title __29__ United States Code, Section __501(c)__. The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN.

Continued on the attached sheet and made a part hereof.      YES   X

AARON MENDELSOHN
FEDERAL MAJOR CRIMES                    _____
(202) 514-9519                                        Signature of Affiant

Sworn to before me, and subscribed in my presence

_____             at Washington, D.C.
Date

_____             _____
Name and Title of Judicial Officer                Signature of Judicial Officer

**AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT**

**Affiant Background**

I, Michael E. Gray II, being duly sworn under oath, depose and state: I am a Special Agent with the Office of Labor Racketeering and Fraud Investigations (OLRFI) of the U. S. Department of Labor's (DOL), Office of Inspector General (OIG), duly appointed by law and acting as such. I am assigned to the Washington Regional Office of OLRFI, where I have been working as a Special Agent since October 2001. Prior to being hired by OLRFI, I was a commissioned Second Lieutenant in the U.S. Army, and was a graduate of the University of Mississippi, where I obtained a B.A. in 1997. I am a graduate from the Criminal Investigative Training Program (CITP) administered at the Federal Law Enforcement Training Center (FLETC) as well as the Inspector General Investigative Training Program (IGITP) also administered at FLETC in Glencoe, Georgia.

Over the last five years, I have conducted numerous complex "white-collar" investigations. My primary responsibility has been to investigate crime and corruption associated with labor union pension plans. I have also investigated criminal activity by labor unions, contractors, associations, and companies involved in government contracts in and around the District of Columbia. I have worked closely with agents from the FBI, IRS, and investigators from the DOL's Employment Benefit Securities Administration (EBSA), who have investigated employee benefit plan embezzlement cases and are familiar with the regulations set forth by the Employee Retirement Income Security Act (ERISA). I have also worked with investigators from the DOL's Office of Labor Management Standards (OLMS), who are experienced in matters involving embezzlement of labor union funds and the rules and regulations set forth by the Labor Management Reporting and Disclosure Act (LMRDA).

I am a graduate of EBSA's criminal investigator program where, based upon my experiences investigating allegations of fraud in DOL programs and activities, I trained other agents and investigators. I have also attended several DOL training programs to enhance my knowledge of investigations involving violations of labor laws, and I have participated in the execution of more than twenty search warrants involving violations of labor laws since 2002.

**General Background**

As more fully outlined below, the DOL's ongoing investigation – being handled jointly with investigators from the EBSA and OLMS – has developed probable cause to believe that a person or persons have committed serious felony offenses against the U.S. in violation of Title 18 U.S.C. § 664 (theft or embezzlement from an employee benefit plan); Title 18 U.S.C. § 1027 (false statements on documents required by ERISA); Title 18 U.S.C. § 1341 (mail fraud); Title 18 U.S.C. § 1343 (wire fraud); Title 18 U.S.C. § 669 (theft or embezzlement in connection with a health care fund); Title 18 U.S.C. § 1347 (health care fraud); and Title 29 U.S.C. § 501(c) (embezzlement of union assets), and

probable cause to believe that the premises described in the attachment to the affidavit contain evidence, contraband, instrumentalities, and/or tools of these offenses, which may be seized pursuant to the warrant that this affidavit supports.

This affidavit contains necessary information, based upon personal knowledge of the affiant as well as discussions with other investigators and cooperating government witnesses, in support of an application for a search warrant to search all premises located or corresponding to **Premises #1** – located at xx G Street, NE, Suite xxx, Washington, DC 20002, the office of the National Association of Special Police and Security Officers (NASPSO) – and **Premises #2** – located at xxxx Carpenter Street SE Washington, DC 20020 (including the residential area of the premises), the home and home-office of NASPSO Executive-Director/Secretary-Treasurer, Caleb Albert Gray-BURRISS (BURRISS), where BURRISS routinely conducts union business – where there is probable cause to believe that there is presently located evidence, contraband, instrumentalities, tools, and/or other materials which establish violations of Titles 18 and 29 of the U.S. Code.

**BACKGROUND OF THE INVESTIGATION**

1. This investigation is predicated upon evidence that BURRISS, the Executive-Director/Secretary-Treasurer of NASPSO, illegally converted NASPSO assets and the assets of NASPSO-sponsored employee benefit plans to his own use in violation of ERISA and the LMRDA. According to the rules and regulations set forth by ERISA and LMRDA, NASPSO's assets and its employee benefit plans are to be spent solely for the benefit of the union members and plan participants.

2. The information below is based on an ongoing investigation being conducted by OLRFI, EBSA, and OLMS. This information includes my own personal observations and involvement in this investigation, interviews of NASPSO members and the employers of NASPSO members, and the review of numerous financial documents and other government investigative files including: (1) from a civil investigation of NASPSO and BURRISS conducted by the DOL; (2) from several National Labor Relations Board (NLRB) cases involving NASPSO and BURRISS; and (3) from a prior criminal investigation of BURRISS and NASPSO conducted by the DOL in 2003.

**Background on NASPSO**

3. NASPSO has been in existence since 1993. NASPSO represents approximately 800 security guards in and around the District of Columbia. NASPSO has collective bargaining agreements (CBAs) with approximately ten employers in this area. BURRISS, in addition to being the current Executive-Director/Secretary-Treasurer of NASPSO, is also the founder and past-president of NASPSO. Because NASPSO is a labor organization in an industry affecting interstate commerce, its conduct and finances are governed by the LMRDA. By his own past admission to various government investigators, BURRISS single-handedly runs all of the operations within NASPSO, is the only full-time paid NASPSO official, and is the sole NASPSO decision-maker.

There is no evidence that any individuals other than BURRISS perform any of the representation or administrative functions of NASPSO. BURRISS has sole possession of all NASPSO assets and records. He also has control over the assets of NASPSO-sponsored employee benefit plans, including the NASPSO pension plan.

4. BURRISS maintains all of the NASPSO funds in accounts at the Harbor Bank of Maryland (Account Nos. xxxxxxxxx [Dues Account]; xxxxxxxxx4 [Pension Account]; xxxxxxxxx [Health Plan Account]). BURRISS also has personal accounts at this financial institution. Upon information and belief, BURRISS maintains documents related to all of these bank accounts at **Premises #1** and **Premises #2**.

5. Similarly, upon information and belief, BURRISS maintains all NASPSO documents related to employment contracts and the pension plan at **Premises #1** and **Premises #2**. BURRISS has an employment contract with NASPSO, which states that he is to receive $60,000 per year in salary. BURRISS organizes NASPSO members and negotiates CBAs with employers. BURRISS maintains the pension remittances of NASPSO employers. BURRISS deposits the employer remittances into the NASPSO pension account at the Harbor Bank of Maryland. BURRISS also maintains the payment spreadsheets that list each NASPSO member and how much per pay period or how much per month the employers are submitting on behalf of the NASPSO members. BURRISS is the sole signatory to these accounts at the Harbor Bank of Maryland.

**Allegations**

NASPSO Dues Account

6. Title 29 U.S.C. § 501(c) prohibits the embezzlement or theft of property from a labor organization covered by the LMRDA. Statutory principals are officers of, and persons employed directly or indirectly by, such labor organizations. Investigators reviewed and analyzed the records of the "dues account" supplied by the Harbor Bank of Maryland for the 2004 to 2006 time period. These documents revealed numerous withdrawals by BURRISS that did not appear to be for the benefit of NASPSO members. For example, in 2005, BURRISS obtained approximately $150,000 through checks made out to himself, checks made out to cash, or ATM withdrawals with little or no explanation as to the purpose or benefit of NASPSO members. In addition, records show that BURRISS made withdrawals from the dues account for: (1) dozens of hotel stays in and around the District of Columbia (some twice in one day), even though BURRIS maintains the NASPSO offices and a home in the District of Columbia; and (2) debits which have no known benefit to NASPSO, such as hundreds of restaurant bills, charges at nail salons and liquor stores, and other such expenditures. BURRISS made similar unexplained withdrawals in 2004 and 2006. Upon information and belief, all of the above records are maintained at **Premises #1** and/or **Premises #2**, and are evidence that BURRISS is in violation of Titles 18 and 29 of the U.S. Code.

NASPSO Pension Plan

      7. Title 18 U.S.C. § 664 prohibits the embezzlement or theft of property by any person from an employee pension or welfare benefit plan subject to Title I of ERISA. Title 18 U.S.C. § 664 also prohibits embezzlement or theft from a "fund connected" with such an employee benefit plan. Per the CBAs, NASPSO collects monthly contributions from its employers for the NASPSO pension plan. These contributions are sent in check form from the union members' employers to NASPSO. Once received by NASPSO, BURRISS deposits these checks into the Harbor Bank of Maryland "pension account." The pension account records obtained from the Harbor Bank of Maryland by DOL investigators indicate that from approximately September 2004 through in or about June 2006, there was a total of $95,997.73 in unexplained cash withdrawals from the pension account directly to BURRISS and through loans to NASPSO. As one example, on October 20, 2005, BURRISS withdrew $10,000 from the so-called pension account and recorded the withdrawal as a "Certificate of Deposit." BURRISS then purchased a $9,000 Certificate of Deposit on November 7, 2005, in his name and in the name of "Thelma M. Dorman," an unknown party, rather than in the name of the pension account. Withdrawals of this nature are prohibited under ERISA, which states that these funds are to be used solely for the benefit of plan members. Upon information and belief, records of these transactions are routinely maintained at **Premises #1** and/or **Premises #2**, and are evidence that BURRISS is in violation of Title 18 of the U.S. Code.

NASPSO Health and Welfare Plan

      8. Title 18 U.S.C. § 669 prohibits the knowing and willful embezzlement, theft, or otherwise without authority conversion or misapplication of any of the moneys, funds, securities, premiums, credits, property, or other assets of a health care benefit program. Based upon a review of bank records, there is probable cause to believe that BURRISS has violated this law in that BURRISS initiated a NASPSO-sponsored health and welfare plan ("the Health Plan") in 2004 by opening an account at the Harbor Bank of Maryland. Soon thereafter, BURRISS executed CBAs with unions members' employers specifying that employers had to make contributions to the NASPSO Health Plan on behalf of NASPSO members in accordance with their legal obligation. Once the employers agreed to participate in the Health Plan, NASPSO members were required to participate. Contributions from employers to the Health Plan resulted in a sizeable deduction from each NASPSO member's paycheck. The Health Plan account currently contains approximately $83,000 (a conservative figure given the amount of contributions per NASPSO member dictated in the CBAs). This figure is particularly noteworthy because the Health Plan Account shows no disbursements to service providers, professional administrators, or insurance carriers. The sole disbursements, other than two checks made out to BURRISS totaling $750, are twenty-four $100-200 reimbursement checks paid to NASPSO members when the Health Plan was being introduced. To date, BURRISS has never filed a 5500 report with the DOL on behalf of the Health Plan.

      9. In 2006, BURRISS contracted with the firm of FCE Benefit Administrators Incorporated (FCE), of Burlingame, California, to serve as third-party administrator (TPA) of the Health Plan. Employer contributions on behalf of NASPSO members were

sent to FCE beginning in February 2006. On April 1, 2006, the CEO of FCE, Gary Beckman, declared as part of a civil investigation that the Health Plan was operational in every respect, and FCE began distributing materials to NASPSO members. When contacted by DOL civil investigators in 2006, FCE officials were initially not forthcoming with the specifics of NASPSO members' coverage and/or where the funds for the Health Plan were invested. In February 2007, however, as part of discovery in a civil lawsuit, FCE provided the Health Plan's Income Statement, Balance Statement, and statement of an account. Initial review of these statements by DOL investigators indicated that the statements are not internally consistent and pose a number of continuing questions. For example, FCE represented that it received $644,000 in contributions on behalf of the Health Plan in 2006, and $152,000 was withdrawn from the Health Plan. However, only $10,000 in claims were paid. Initial review of the records of three employers of NASPSO members (SecTek, American Security Program, and Security Assurance Management) indicated that no insurance had been provided to NASPSO members despite contributions being made by employers on behalf of NASPSO members. Upon information and belief, records related to the Health Plan are maintained at **Premises #1** and/or **Premises #2**, and are evidence that BURRISS and/or FCE is in violation of Title 18 of the U.S. Code.

**Purposes of the Search Warrant**

10. The purpose of this search warrant is to allow investigators access to the personal/business documents and records of BURRISS, NASPSO and FCE which, upon information and belief, are located at **Premises #1** and/or **Premises #2.** These documents are evidence of criminal violations of Title 18 U.S.C. §§ 664, 669, 1341, 1343, 1347, and Title 29 U.S.C. § 501(c). For the following reasons, it is believed that BURRISS works at both **Premises #1** and **Premises #2** on a regular basis: (1) in a DOL Report of Interview in 2003, BURRISS stated that he worked from his home and that his secretary transferred NASPSO calls there; (2) surveillance placed BURRISS at home during normal work hours on multiple days; and (3) BURRISS contacted NASPSO members from his home phone number at various hours throughout the day. The specific goal of the requested warrant is to obtain additional evidence in support of the alleged criminal violations committed by BURRISS, NASPSO, and FCE. There is probable cause to believe that there is presently located within **Premises #1** and/or **Premises #2** the materials listed in Attachments A-2 and B-2, which may constitute the fruits or instrumentalities of the alleged criminal violations. A search warrant is necessary to obtain these personal/business documents because my training and experience has shown that, in attempting to voluntarily obtain compliance by subpoena, documentary evidence is improperly destroyed or otherwise not produced as required.

11. Based upon your Affiant's training, experience and participation in numerous financial crimes investigations involving fraudulent activities, your Affiant has learned and knows:
    a.      That individuals involved in financial crimes and fraudulent activities very often place assets in names other than their own to avoid detection of these assets by government agencies; that they often place these assets in entities in order to avoid detection of these assets by government agencies; that even though these assets are in

other persons' or companies names, they actually own and continue to use these assets and exercise dominion and control over them.

   b. Those involved in financial crimes and fraudulent activities often maintain records, receipts, notes, ledgers, credit card receipts, airline tickets, money orders, and other papers relating to financial institution fraud. That the aforementioned records, receipts, note ledgers, etc., are maintained where they have ready access. In addition, that some of the information related to fraud is often stored in computer equipment and electronic storage media.

   c. That it is common for persons involved in financial crimes and fraudulent activities to secrete the proceeds of bank transactions and records of fraudulent transactions in secure locations within their residences, automobiles, and business and storage facilities for their ready access and to conceal them from law enforcement.

   d. That persons involved in financial crimes and fraudulent activities conceal in their residences, automobiles, businesses and storage facilities, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of fraudulent activities and evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of large sums of money made from engaging fraudulent activities.

   e. That those involved in financial crimes and fraudulent activities commonly maintain addresses or telephone numbers in books, on papers and computers/electronic media which reflect names, addresses and/or telephone numbers of their associates.

   f. That it is common for persons involved in financial crimes and fraudulent activities to store information pertaining to the fraud schemes on computer hard drives, diskettes, tapes and other media capable of storing information in a form readable by computer. This information includes formats for fraudulent identification documents, and letters issued to financial institutions.

   g. That searching and seizing information from computers often requires agents to seize most or all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment.

   h. Your affiant knows that banks commonly mail bank statements and often cancelled checks to the customers residences. It is reasonable to believe that financial documents related to the Harbor Bank of Maryland bank accounts and thus related to BURRISS' financial crimes and fraudulent activities will be found in his home/home-office.

  **WHEREFORE,** your deponent respectfully request that a warrant be issued authorizing your deponent or any federal agent with proper assistance from other law enforcement officers, to search the premises known as THE OFFICES OF THE NATIONAL ASSOCIATION OF SPECIAL POLICE AND SECURITY OFFICERS (NASPSO) located at xx G ST., NE, SUITE xxx, WASHINGTON, DC 20002 (Leased by Caleb BURRISS) – **Premises #1** – and xxxx CARPENTER STREET, SE, WASHINGTON, DC 20020 (single family home owned by BURRISS and his family) – **Premises #2**.

**NOTE**: Procedures have been adopted to minimize disruption of any legitimate ongoing business by BURRISS, NASPSO, and FCE. BURRISS, NASPSO, and FCE will have access to all records, as needed, under appropriate government supervision. Copies of relevant documents will be returned as soon as possible. Arrangements will also be made to permit BURRISS, NASPSO, and FCE to photocopy, in bulk or individually, any and all seized documents and records at an offsite facility. Seized files and documents will, to the extent practicable, also be seized and maintained in their original files or containers to facilitate the integrity of all files and documents.

_____
                Michael E. Gray II
                Special Agent
                with the (OL RF)
                U. S. Department of Labor's

Subscribed and sworn to before me this_____day of April, 2007.

_____
                United States Magistrate Judge

<u>Attachment A-1</u> (*xx G Street NE, xth Floor, Washington, DC 20002*)

*Offices of the National Association of Special Police and Security Officers* NASPSO is located at the **Union Station Business Center** at xx G Street NE, xth Floor, Washington, DC 20002. The building is a red brick and window office building with approximately ten stories located in the Union Station area of Washington DC. The building is across the street from the National Postal Museum Building and is at the intersection of G Street and North Capitol Street. The NASPSO office is located on the seventh floor. The seventh floor is made up of approximately thirty-five small offices that sublease from the ownership of the building. A picture of the building and a map of the location are below.




<u>Attachment A-2</u> (*xx G Street NE, xth Floor, Washington, DC 20002*)
*Items to be seized at the NASPSO Office*

The lists of items to be searched for and seized are as follows:
1. Any documents, records, and objects relating to the Department of Labor, the Office of Labor Management Standards, Employment Benefits Security Administration.
2. Any financial or accounting documents, records, and objects, including bank records, loan records, credit card records, ledgers, check registers, statements, credit cards, lines of credit, deposit records, faxes, memoranda, correspondence, applications, and telephone records.
3. Any and all personnel files or documents for any current or former NASPSO employee, officer, or member.
4. Any documents, records, and correspondences relating to the hiring, training, and employment practices of NASPSO.
5. Any and all correspondence between FCE and NASPSO and representatives of the Department of Labor and the Internal Revenue Service.
6. Any documents, records, and objects relating to federal, state, and local tax returns, including originals and/or copies of state and federal income tax returns for the tax years 2000, 2001, 2002, 2003, 2004 and 2005, together with all forms, schedules and attachments; worksheets and/or supporting documentation used in the preparation of tax returns; records identifying the taxpayers for whom these tax returns have been prepared; invoices, receipts or other records relating to tax consulting or tax preparation fees charged.
7. Calendars, schedules, or appointment books.
8. Any documents, records, and objects indicating the location of other records relating to the business of NASPSO, including, but not limited to, storage contracts, rental agreements, safety deposit box keys, and safe combinations.
9. Any documents, records, and objects outlined in paragraphs one through eleven that are stored electronically on business or personal computers or computer media, including but not limited to telefax machines, hard disk drives, tape storage, floppy diskettes, and removable hard diskettes, laser disks, zip drives, including the hardware and software necessary to access such information.

<u>Attachment B-1</u> (xxxx *Carpenter Street, SE, Washington, DC 20020*)

xxxx Carpenter Street, SE, Washington, DC 20020, is a single story family residence with what appears to be a walkout basement garage attached to the structure. Facing the structure is a single bay window with four panes. The residence has "xxxx" with black numbers above the front door as well as located on a mailbox near the curb in front of the house. The main entryway into the residence is to the left of the bay window through a single wood door with a clear storm door located in front of the house. A picture is below. The structure has a light red brick exterior and white wood trim with a white single car garage.



<u>Attachment B-2</u> *(xxxx Carpenter Street, SE, Washington, DC 20020)*

The lists of items to be searched for and seized are as follows:

1. Any documents, records, and objects relating to the Department of Labor, the Office of Labor Management Standards, Employment Benefits Security Administration.

2. Any financial or accounting documents, records, and objects, including bank records, loan records, credit card records, ledgers, check registers, statements, credit cards, lines of credit, deposit records, faxes, memoranda, correspondence, applications, and telephone records.

3. Any and all personnel files or documents for any current or former NASPSO employee, officer, or member.

4. Any documents, records, and correspondences relating to the hiring, training, and employment practices of NASPSO.

5. Any and all correspondence between FCE and NASPSO and representatives of the Department of Labor and the Internal Revenue Service.

6. Any documents, records, and objects relating to federal, state, and local tax returns, including originals and/or copies of state and federal income tax returns for the tax years 2000, 2001, 2002, 2003, 2004 and 2005, together with all forms, schedules and attachments; worksheets and/or supporting documentation used in the preparation of tax returns; records identifying the taxpayers for whom these tax returns have been prepared; invoices, receipts or other records relating to tax consulting or tax preparation fees charged.

7. Calendars, schedules, or appointment books.

8. Any documents, records, and objects indicating the location of other records relating to the business of NASPSO, including, but not limited to, storage contracts, rental agreements, safety deposit box keys, and safe combinations.

9. Any documents, records, and objects outlined in paragraphs one through eleven that are stored electronically on business or personal computers or computer media, including but not limited to telefax machines, hard disk drives, tape storage, floppy diskettes, and removable hard diskettes, laser disks, zip drives, including the hardware and software necessary to access such information.